UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MARC S. RAWLS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| vs. } | **CASE NO. CV 06-B-0193-NE** |
| } | |
| **MICHAEL J. ASTRUE,**[1] } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Marc S. Rawls ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") Payments under Section 1614(a)(3)(A) of the Social Security Act (the "Act"). Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is not supported by substantial evidence and this case is due to be **REVERSED** and **REMANDED**.

**I.      PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on February 14, 2003, claiming disability due

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this suit by operation of law.

1

to depression and problems with his back, hip, knee, and lung.[2]  (R. 110-113.)  Plaintiff's application was denied initially and upon reconsideration.  (R. 91-92, 98-102.)  Plaintiff's timely request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was held before an ALJ on December 22, 2004.  (R. 37-64.)  On May 2, 2005, the ALJ issued an unfavorable hearing decision, (R. 23-36), which became the final decision of the Commissioner on November 29, 2005, when the Appeals Council denied Plaintiff's request for review.  (R. 20-22, 8-10.)  *See* 20 C.F.R. § 416.1481. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

II.   **STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, this court's role is a narrow one, limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were applied.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Although the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), this limited scope of review does not render affirmance

---

[2] Plaintiff previously filed an application for SSI on October 31, 1997.  (R. 305-309.)  Plaintiff's claim was denied initially and upon reconsideration.  (R. 287-88, 289-301.)  On December 29, 1998, an Administrative Law Judge (ALJ) issued an unfavorable decision.  (R. 68-79.)  The decision of the ALJ became the final decision of the Commissioner of Social Security on March 31, 2000, when the Appeals Council denied plaintiff's request for review.  (R. 96-97.)  Plaintiff sought no further appeal.

automatic: "'despite [this] deferential standard for the review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached.'" *Lamb*, 847 F.2d at 701 (alterations in original) (citation omitted). The credibility of witnesses and the resolution of conflicting statements and testimony are determined by the Commissioner as the trier of facts. *Bloodsworth*, 703 F.2d at 1242.

The burden is on the plaintiff to prove disability. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973).[3] The plaintiff's "burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, this court must affirm if the decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. Substantial evidence is defined as more than a scintilla, but less than a preponderance: "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

### III.   FACTUAL SUMMARY

The Social Security Regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. 20 C.F.R. § 416.920; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The five steps are as follows:

(1)   The Commissioner must first determine whether the claimant satisfies his burden of coming forward with proof that he is not engaged in "substantial

---

[3] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant is working, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b).

(2) If the claimant is not engaged in "substantial gainful activity," the Commissioner must determine whether the claimant suffers from a medically sever impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.9209(c).[4] Thus, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *Yuckert*, 482 U.S. at 146 n.5; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

(3) If the claimant has a severe impairment, the Commissioner must determine whether the claimant's impairment meets the durational requirement and is equivalent to any one of the number of listed requirements that the Commissioner acknowledges are so severe as to prevent the claimant from performing substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets or equals an impairment listed in the regulations, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404. 1520(d), 416.920(d).

(4) If the impairment does not meet one of the listed impairments, and therefore, is not conclusively presumed to be disabling, the Commissioner must review the claimant's residual functional capacity ("RFC"), along with the physical and mental demands of the claimant's prior work experience, to determine whether the claimant is capable of performing work he has performed in the past. If the claimant is still capable of performing the kind of work that he has done in the past, the Commissioner will not find the claimant disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). As with elements one through three, the claimant bears the burden of establishing that the impairment prevents him from performing his past work. *Yuckert*, 482 U.S. at 146 n.5.

---

[4] The regulations provide: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. §§ 404.1520(c), 416.920(c).

(5)   Finally, if the claimant cannot do the kind of work that he performed in the past, the Commissioner must review the claimant's RFC and his age, education, and work experience to determine whether the claimant is capable of performing any other work which exists in the national economy.[5]  If the claimant is not capable of performing any other work which exists in the economy, then the Commissioner must find that the claimant is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Unlike elements one through four, however, the Commissioner bears the burden of establishing that there are other jobs in the national economy that the claimant is capable of performing.  *Yuckert*, 482 U.S. at 146 n.5; *Chester*, 792 F.2d at 131.

In the instant case, applying the first step of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (R. 28, 35.)  Pursuant to step two, the ALJ determined that Plaintiff suffers from "severe" impairments including: hypertension; arthritis; gout; mild to moderate left ulnar entrapment; right scapular winging; cervical spine spondylosis without significant stenosis; probable Schmorl's nodes at C7; probable adjustment disorder; and ethanol abuse in remission.  (R. 30, 35.)  However, applying the third step of the sequential evaluation, the ALJ concluded that none of Plaintiff's impairments, singly or in combination, meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. 30, 35.)

Under the fourth step of the sequential evaluation, the ALJ considered the evidence of record in order to determine Plaintiff's residual functional capacity and

---

[5] "[W]ork which exists in the national economy" is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

whether he was capable of performing work he has done in the past. (R. 31-33.) After consideration of Plaintiff's assertions and testimony, the ALJ acknowledged that Plaintiff does have some impairment. (R. 31-32.) However, the ALJ found Plaintiff's testimony not fully credible, based on his opinion that "the objective medical evidence, the claimant's activities of daily living, and the absence of any disabling treating source opinion do not substantiate the alleged severity of the claimant's condition." (R. 32.) The ALJ ultimately determined that Plaintiff has the following residual functioning capacity:

> "[H]e can perform light work activity with less than moderately severe pain. Claimant would need a sit/stand option at the work site without any significant postural activities such as squatting, crawling or crouching, and no overhead work. The claimant would have moderate or less restrictions in all areas as to his ability to cope with the mental demands of the workplace."

(R. at 32, 35.) In light of Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff was not able to perform his past relevant work. (R. 33.)

In the fifth and final step of the sequential evaluation, the ALJ reviewed Plaintiff's age, education, and work experience. (R. 33-34.) Relying upon the testimony of a vocational expert and his own findings regarding Plaintiff's residual functional capacity, the ALJ determined that Plaintiff is capable of performing other work which exists in the national economy. (R. 33-34.) Using Medical-Vocational Rule 202.18 as a framework, the ALJ determined that "[a]lthough the claimant's limitations do not allow him to perform the full range of light work . . . there are a significant number of jobs in the

6

national economy that he could perform." (R. 34.) Accepting the testimony of the vocational expert, the ALJ found that Plaintiff is capable of performing work as a gate guard, which exists at 2,200 in the state economy and 100,000 in the national economy, and as a ticket taker, which exists at 1,250 in the state economy and 60,000 in the national economy. (R. 34, 35.) Therefore, the ALJ determined, pursuant to 20 C.F.R. §§ 404.1520(f), 416.920(f), that Plaintiff was not under a disability at any time through the date of the hearing decision. (R. 35.)

## IV. DISCUSSION

### A. Plaintiff's Complaint

Plaintiff has three bases for this appeal. First, Plaintiff contends that the ALJ incorrectly relied upon the opinion of Dr. Kenneth Warren, a state-agency non-examining psychologist, over the consultative assessment of Dr. Charles E. Houston. (Doc. 6, p. 4-6.) Second, Plaintiff maintains that the ALJ should have ordered an additional consultative examination to fully develop the record. (Doc. 6, p.7.) Third, Plaintiff argues that the ALJ should have included all of Dr. Warren's assessment in the hypothetical question posed to the vocational expert. (Doc. 6, p. 5 & 6.) Specifically, the ALJ should have included the limitation that Plaintiff required casual and infrequent contact with the public, which Dr. Warren noted in his assessment. (Doc. 6, p. 5 & 6.)

Because this court agrees with Plaintiff's argument that the hypothetical question posed to the vocational expert was flawed, it need not address Plaintiff's other two

arguments.

**B.     Analysis**

The ALJ concluded that Dr. Warren's assessment was more consistent with the record than Dr. Houston's and should form the basis for establishing Plaintiff's mental residual functional capacity.  (R. 33-34.)  On appeal, the Commissioner argued that the ALJ had no duty to develop the record any more fully with additional consultative examinations.  (Doc. 7, p. 11-13.)  Thus, the Commissioner's position is that the record supports Dr. Warren's assessment, the record need not have been developed further with additional examinations of Plaintiff, and Dr. Warren's assessment was the proper basis for establishing Plaintiff's residual functional capacity and what jobs, if any, he could perform.  Assuming those points to be true, the ALJ should have included all of Dr. Warren's limitations in the hypothetical question posed to the vocational expert.  As addressed below, the ALJ failed to include the restriction that Plaintiff have only casual and infrequent contact with the public.  This court finds that, in so doing, the ALJ failed to pose a hypothetical to the vocational expert which encompassed all of Dr. Warren's limitations.  Thus, the vocational expert's testimony does not constitute substantial evidence of other occupations Plaintiff could perform, and the Commissioner has failed to meet its burden of proof at step five of the sequential analysis.  Accordingly, Plaintiff is disabled within the meaning of the Social Security Act.

Vocational expert testimony is common at a claimant's hearing before an ALJ.

*Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1171 (N.D. Ala. 2006).  The vocational expert typically testifies as to "whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities . . . ."  *Id*.  Such testimony is used to meet the Commissioner's burden of establishing work that the claimant can perform under step five of the sequential analysis.  *Id*.  "[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  Here, because the vocational expert's testimony was based upon a hypothetical which did not include all of the claimant's limitations, the ALJ has not met its burden of establishing work the claimant may perform.  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)(where ALJ failed to instruct vocational expert on all of claimant's impairments, Secretary's denial of benefits was not supported by substantial evidence).  The action is therefore due to be remanded with instructions that the ALJ ascertain whether jobs exist that Plaintiff could perform in light of all his limitations.

In the summary evaluation of the state agency opinion, Dr. Warren indicated that Plaintiff's ability to interact appropriately with the general public was moderately limited. (R. 217.)  The ALJ incorporated this restriction into the hypothetical question, asking the vocational expert to assume that Plaintiff "would have moderate or less restrictions in all areas as to his ability to cope with the mental demands of the work place in each and

every area." (R. 62.) Plaintiff maintains that the ALJ's hypothetical, as stated, failed to include Dr. Warren's handwritten notation that Plaintiff's contact with the public should be casual and infrequent. (Doc. 6, p. 5 & 6; R. 218.)

In response to the ALJ's hypothetical question and limitations proposed therein, the vocational expert stated that there would be light, unskilled positions that Plaintiff could perform. (R. at 62.) As examples, the vocational expert listed "[p]ositions such as gate guard, 2,200 of those positions in the state, 100,000 in the national economy. Also positions as a ticket taker, light unskilled level, 1,250 of those in the state, 60,000 in the national economy." (R. at 62.) Unskilled work ordinarily involves dealing primarily with objects rather than with data or people. SSR 85-15. The mental demands of unskilled labor include "the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*. Plaintiff argues that the restriction of casual and infrequent contact with the public cannot be consistent with performance of these jobs. (Pl. Brief at 6.) The Commissioner asserts that "moderate or less restrictions in all areas of mental functioning . . . is not inconsistent with Dr. Warren's findings." (Doc. 7, p. 15.)

This court fails to see how a person who requires casual or infrequent contact with the public could perform jobs that by their very nature require just the opposite. The vocational expert's own testimony, which included only jobs essentially requiring public

contact, lends support to Plaintiff's contention that not all of his limitations were included in the hypothetical. Accordingly, the Commissioner has failed to carry its burden of establishing with substantial evidence work Plaintiff could perform. *See Wilson*, 284 F.3d at 1227 (ALJ's hypothetical must include all of claimant's limitations for vocational expert's testimony to constitute substantial evidence). This case is, therefore, due to be remanded for further proceedings, including, but not limited to, a determination of whether specific jobs exists which Plaintiff could perform given all his limitations. *See Pendley*, 767 F.2d at 1563 (ordering remand of case where vocational expert's testimony did not constitute substantial evidence).

V.   **Conclusion**

Applying the standard of review outlined above, upon consideration of the record as a whole, the memoranda of the parties, and the decision of the Commissioner, the court is of the opinion that this case is due to be **REVERSED** and **REMANDED**. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this the 29th day of September, 2008.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE